# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

COREY HOOVER,

    Petitioner,

           -vs-

STATE OF OHIO,

    Respondent.

Case No. 2:10-cv-704

District Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

      This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254. The Petition was filed August 9, 2010 (Doc. No. 2). On Judge Deavers' Order (Doc. No. 3), the State of Ohio has filed an Answer and Return of Writ (Doc. No. 6). Upon transfer of the reference, the Magistrate Judge inquired of Petitioner's counsel whether he intended to file a reply to the Answer and was advised that no reply would be filed and the case was ripe for decision.

### Procedural History

      Petitioner Corey Hoover was arrested September 8, 2006, and cited for a violation of Ohio Revised Code § 4511.19(A)(2). The case was filed in the Marysville[1] Municipal Court and Hoover moved to dismiss the case on the grounds that §4511.19(A)(2) was unconstitutional in

---

[1] The Petition refers to the Union County Municipal Court, but the Answer refers to the Marysville Municipal Court. "The Marysville Municipal Court has jurisdiction within Union County." Ohio Revised Code § 1901.02. There is no such entity as the Union County Municipal, at least as of the most recent amendments to § 1901.02.

1

violation of the Fourth Amendment.  Having lost on that motion, Hoover pled no contest and was sentenced pursuant to Ohio Revised Code § 4511.19(G)(1)(b)(ii) to a sentence including sixty days' incarceration (Journal Entry, Answer, Doc. No. 6, PageID 151).  That sentence was stayed pending appeal and the stay remains in effect.  *Id.*

The Ohio Third District Court of Appeals affirmed the conviction but reversed the sentence.  *State v. Hoover*, 173 Ohio App. 3d 487 (Ohio App. 3d Dist. 2007).  Both parties appealed.  The Ohio Supreme Court affirmed the court of appeals as to the conviction, but reversed it as to the sentence and reinstated the original sentence imposed by the municipal court.  *State v. Hoover*, 123 Ohio St. 3d 418 (2009).  The United States Supreme Court denied Hoover's petition for writ of certiorari.  *Hoover v. Ohio*, 130 S. Ct. 2380 (2010).  The instant Petition was timely filed thereafter.

## Analysis

Petitioner pleads one ground for relief, to wit, that "he is facing potential incarceration pursuant to Ohio Revised Code § 4511.19(A)(2) in violation of his constitutional right under the Fourth Amendment to refuse or revoke his consent to a warrantless search."  (Petition, Doc. No. 2, PageID 5).  The state raises no affirmative or procedural defenses, thus requiring this Court to address the merits of the Petition.

The factual background of the cases is set forth in Justice Lanzinger's opinion for the Ohio Supreme Court:

> **[\*\*P2]** In the early morning hours of September 8, 2006, Deputy Kelly S. Nawman stopped a car after she saw it cross the center line by a tire's width. Upon approaching the vehicle, she detected a strong scent of intoxicants. Corey Hoover, the appellee and cross-

2

appellant in this case, was the driver. He admitted to having drunk some alcohol before driving, and he performed poorly on the field sobriety tests. Hoover was then arrested and read his *Miranda* rights. After being taken to the Union County Sheriff's Office, he was asked to submit to a breath-alcohol test, but he refused.

[**P3] Hoover was charged with violating R.C. 4511.19(A)(2), which enhances the sentence for a DUI conviction if the offender refuses to submit to a chemical test and has been convicted of a DUI violation within the past 20 years. Hoover pleaded not guilty to the charge and moved for dismissal, claiming that the refusal provision and its corresponding sentence enhancement violated his constitutional rights under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution and further violated his right to due process under the United States and Ohio Constitutions.

[**P4] The trial court overruled the motion to dismiss, and Hoover entered a no-contest plea. The court found Hoover guilty, and because he had a prior DUI conviction within the previous six years, sentenced him to 60 days in jail (with 40 days suspended) under R.C. 4511.19(G)(1)(b)(ii), which requires imposition of a jail term of at least 20 days upon a defendant who violates R.C. 4511.19(A)(2) and has a previous DUI conviction within the past six years. If Hoover had refused to consent to a chemical test but had been convicted of DUI under R.C. 4511.19(A)(1), which does not include the element of refusing to consent, his mandatory minimum jail time would have been ten days. The trial court stayed the sentence pending Hoover's appeal.

*State v. Hoover, supra,* ¶¶ 2-4.

Both parties agree that the Ohio Supreme Court decided Petitioner's claim on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Petitioner recognizes that

3

this is the governing law under the Antiterrorism and Effective Death Penalty Act of 1996 as codified at 28 U.S.C. § 2254(d)(1)(Petition, Doc. No. 2, PageID 5).

The Supreme Court precedent cited by Petitioner *Camara v. Municipal Court*, 387 U.S. 523 (1967); *Lefkowitz v. Cunningham,* 431 U.S. 801 (1977); *Schmerber v. California,* 384 U.S. 757 (1966); *Skinner v. Rlwy Lavor Executives' Assn.,* 489 U.S. 602 (1989); and *United States v. Drayton*, 536 U.S. 194 (2002).

The statute involved is Ohio Revised Code § 4511.192(A)(2)[2]

> [**P10] "No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or a municipal OVI offense shall do both of the following:
>
> [**P11] "(a) Operate any vehicle * * * within this state while under the influence of alcohol, a drug of abuse, or a combination of them;
>
> [**P12] "(b) Subsequent to being arrested for operating the vehicle * * *, being asked by a law enforcement officer to submit to a chemical test or tests under [R.C. 4511.191], and being advised by the officer in accordance with [R.C. 4511.192] of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests."

*Hoover, supra*, ¶¶ 10-12. Ohio Revised Code § 4511.191 is Ohio's implied consent statute which provides that Ohio drivers implicitly consent to a search, through means of a chemical test, to determine the level of intoxicating substances in the driver's body when stopped for a DUI offense. *Id.* at ¶¶ 14-15.

The only United States Supreme Court case cited by Justice Lanzinger is *Schmerber, supra*. Petitioner cites *Schmerber* and *Skinner* only for the proposition that "taking a blood, breath, or urine specimen falls within the search and seizure protection of the Fourth

---

[2] This is the version of the statute in effect at the time of Hooever's arrest. *State v. Hoover, supra*, ¶ 9. N.2.

4

Amendment." (Petition, Doc. No. 2, PageID 6.)  That proposition is uncontested.

Justice Lanzinger cited *Schmerber* for the further proposition that when a DUI arrest is made with probable cause, exigent circumstances justify taking the required specimen without a warrant and without the driver's consent.  Hoover does not contest that reading of *Schmerber* in that no specimen was taken from him.  Put another way, the arresting officer did not exercise the authority recognized in *Schmerber* to obtain a testable specimen without consent.  Instead, Ohio has subjected Hoover to an enhanced criminal penalty because he refused to submit to a test or, in other words, withdrew or revoked the consent he had implicitly given by driving on Ohio roads under circumstances giving rise to probable cause to believe he was driving under the influence of alcohol.

The Ohio Supreme Court flatly rejected Hoover's claim, holding:

> Hoover has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication. See *Cunningham*, 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40, paragraph two of the syllabus; *Schmerber*, 384 U.S. at 770-771, 86 S.Ct. 1826, 16 L.Ed.2d 908. Asking a driver to comply with conduct he has no right to refuse and thereafter enhancing a later sentence upon conviction does not violate the constitution.

*Hoover, supra*, at ¶ 22.  Hoover must show that this holding is contrary to or an objectively unreasonable application of clearly established United States Supreme Court precedent.

Hoover relies principally on *Camara, supra.*  In that case the defendant was prosecuted for failure to allow a housing inspector to inspect his residential apartment, refusal being a criminal violation of the San Francisco Housing Code.  Camara asserted the ordinance was unconstitutional because it permitted entry into a private dwelling without a search warrant and without probable cause to believe a housing code violation had occurred.  The inspection which Camara refused was a routine annual inspection for possible violations of the Housing Code.

5

The Supreme Court refused to recognize a general public interest exception to the warrant requirement, holding:

> In assessing whether the public interest demands creation of a general exception to the Fourth Amendment's warrant requirement, the question is not whether the public interest justifies the type of search in question, but whether the authority to search should be evidenced by a warrant, which in turn depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search. See *Schmerber v. California,* 384 U.S. 757, 770-771. It has nowhere been urged that fire, health, and housing code inspection programs could not achieve their goals within the confines of a reasonable search warrant requirement. Thus, we do not find the public need argument dispositive.

387 U.S. at 533.  Of course, the Court had decided in *Schmerber* in the term just before *Camara* that the public interest did support an exception to the warrant requirement for DUI charges. Hoover asserts *Camara* stands for the proposition that "[t]he Fourth Amendment guarantees a criminal suspect the *absolute* [emphasis sic] right to refuse consent to a search, and said refusal of consent cannot be punished criminally." (Petition, Doc. No. 2, PageID 5, *citing Camara*, 387 U.S. at 540.  What the Supreme Court actually held in *Camara* was "appellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the conviction." *Id.*  Camara's situation was significantly different from Hoover's in that (1) the housing inspectors did not assert they had probable cause to believe Camara had committed a crime or that evidence of the crime would be found on the premises and (2) Camara refused entry into his home, an area of heightened protection from government intrusion both before and after the *Camara* decision.

Hoover also relies on *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977).  In that case the Supreme Court invalidated a New York election law for infringing on a person's privilege

against self-incrimination under the Fifth Amendment.  *Lefkowitz* has no application here, since the provision of a chemical specimen is not a testimonial act.  *Schmerber, supra.*

Finally, Hoover relies on *United States v. Drayton*, 536 U.S. 194 (2002).  In that case the Supreme Court upheld as voluntary a consent to search given by a bus passenger who had not been advised of his right to refuse consent.  *Drayton* reached the Supreme Court on appeal of denial of a motion to suppress.  The question in the case was whether the bus passenger's consent to search had been voluntary or not.  There was no question whether the bus passenger could have been punished for refusing consent because the State did not purport to do so.  Instead, it punished Drayson for possession of cocaine.

Aside from Supreme Court precedent, Hoover cites *Gasho v. United States*, 39 F.3d 1420 (9th Cir. 1994), for the proposition that "[t]he Fourth Amendment gives citizens the right to refuse to consent to warrantless searches and seizures." *Id.* at 1431.  *Gasho* comes closer to supporting Hoover's position, because the Ninth Circuit held in that case that criminal intent could not be inferred from passive refusal to hand over property, in that case airplane log books.  *Gasho* conflicts with the Supreme Court's holding in *South Dakota v. Neville,* 459 U.S. 553 (1983), that admission of a DUI defendant's refusal to take the test does not violate his Fifth Amendment rights and that the refusal is competent circumstantial evidence of consciousness of guilt, similar to escape from custody and suppression of evidence.  Even if *Gasho* were directly in point, however, it would not meet AEDPA standards because it is not a decision of the United States Supreme Court.

Petitioner has thus failed to meet his burden of showing that the Ohio Supreme Court decision in this case is an objectively unreasonable application of clearly established Supreme Court precedent.

Respondent defends the conviction on the grounds that (1) having impliedly consented to the search by driving on Ohio roads, Hoover could not validly withdraw the consent, (2) there were exigent circumstances, and (3) the search would have been incident to a valid arrest (Answer, Doc. No. 6, PageID 61-65.) These arguments are beside the point. Hoover's claim is not that evidence of his crime was seized from him in violation of the Fourth Amendment. It is rather that the Fourth Amendment protects him from prosecution for not giving the breath sample.

As the Ohio Supreme Court analyzed the case, the crime in question is not refusing to give a sample, but driving under the influence of alcohol with (1) a prior conviction within twenty years and (2) refusal to give a breath sample where a sample has been demanded of a driver as to whom there was at the time of the demand probable cause to believe the driver had driven under the influence. *Hoover, supra*, at ¶ 21. The case does not present a question under *Blakely v. Washington*, 542 U.S. 296 (2004), because the Ohio Supreme Court plainly held proof of refusal was an element of the offense which would have had to be proven beyond a reasonable doubt if Hoover had not pled no contest. *Id.*

Ohio's position in this case is supported by *Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177 (2004. There the Supreme Court upheld a conviction under a Nevada statute making it a misdemeanor to refuse to identify oneself to a police officer against a claim of invasion of privacy under the Fourth Amendment. The police inquiry was found to have "an immediate relation to the purpose, rationale, and practical demands of the police stop" which was justified under *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* at 188. That certainly is as true of the breath sample sought here as it was of the identity demanded in *Hiibel*.

Further supporting Ohio's position is *Burnett v. Municipality of Anchorage*, 806 F.2d

8

1447 (9th Cir. 1986), where the court of appeals found constitutional an Anchorage ordinance punishing criminally the refusal of a sample.  *Burnett* is not directly in point because it was decided well before the AEDPA was adopted, but it found no Fourth Amendment violation at a time in our jurisprudence when a habeas court could consider that question de novo, rather than with deference to state court decisions.

## Conclusion

Because Hoover has not shown that the Ohio Supreme Court decision in this case is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent, the Petition should be dismissed with prejudice.  Three distinguished Justices of the Ohio Supreme Court disagreed with the result in this case, but did not base their decision on any in-point United States Supreme Court precedent.  Nevertheless, should Petitioner decide to appeal, he should be granted a certificate of appealability.

January 29, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).